IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RIANNA WALLACE              )
                                     )
        Plaintiff,           )
                                     )
    -vs-                 )         Civil Action No. 18-1516
                                   )
ANDREW M. SAUL,         )
                                   )
        Defendant.      )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

## Synopsis

Plaintiff Rianna Wallace ("Wallace") filed an application for a period of disability and disability insurance benefits on February 19, 2015, alleging disability beginning on February 20, 2015. (R. 13).[1] She was represented by counsel at a hearing before an Administrative Law Judge ("ALJ"), during which both she and a vocational expert ("VE") appeared and testified. (R. 13) Ultimately, the ALJ denied benefits and the Appeals Council denied Wallace's request for review. She then filed this appeal. The parties have filed Cross-Motions for Summary Judgment. *See* ECF Docket Nos. 6 and 10. For the reasons set forth below, the ALJ's decision is affirmed.

## Opinion

1. Standard of Review

---

[1] The ALJ determined that Wallace meets the insured status requirements of the SSA through September 30, 2015. (R. 15).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995

(1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II. The ALJ's Decision

As stated above, the ALJ denied Wallace's claim for benefits. More specifically, at step one, the ALJ found that Wallace has not engaged in substantial gainful activity since the alleged onset date. (R. 15)[2] At step two, the ALJ concluded that Wallace suffers from the following severe impairments: epilepsy; major depressive disorder; bipolar disorder; schizoaffective disorder; anxiety disorder; panic disorder with agoraphobia; personality disorder; attention deficit hyperactivity disorder; and post-traumatic stress disorder. (R. 16) At step three, the ALJ determined that Wallace does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-18) Between steps three and four, the ALJ decided that Wallace has the residual functional capacity ("RFC") to perform medium work with certain restrictions. (R. 18-21) At step four, the ALJ found that Wallace is unable to perform her past relevant work. (R. 21-22) At the fifth step of the analysis, the ALJ concluded that, considering Wallace's age,

---

[2] Wallace did continue to work beyond the alleged onset date, and her earnings were above substantial gainful levels, but she performed the work for less than three months and stopped working because of her symptoms. (R. 16) Consequently, the ALJ determined that the work constituted an unsuccessful work attempt. (R. 16)

education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (R. 22-23)

III. Discussion

I.  Daily Activities

Wallace takes issue with the ALJ's assessment of her ability to perform daily activities. *See* ECF Docket No. 7, p. 7-9.  The ALJ found that Wallace's description of daily activities "are inconsistent with her complaints of disabling symptoms and limitations." (R. 20) Specifically, he noted that:

> The claimant is a mother of four children. While she testified that only two children are currently living with her, during the period at issue, she was living with and taking care of all four children. The claimant indicated in her function report that she would prepare meals, help with hygiene, assist with homework, and play games with her family. The claimant noted that she shopped for groceries and clothes on a weekly basis and performed household chores (Ex. 5E). These activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations the claimant alleged.

(R. 20) The ALJ's consideration of these activities are totally appropriate and are consistent with the regulations. See *Simington v. Colvin*, Civ. No. 13-178, 2014 WL 4829031, at * 5 (W.D. Pa. Sept. 29, 2014), citing, 20 C.F.R. §§ 404.1529(c) and 416.929(c). Additionally, substantial evidence of record supports the ALJ's conclusions in this regard. (R. 192-198) Further, although Wallace faults the ALJ for failing to mention what Wallace insists were difficulties she encounters when shopping, preparing meals, and doing chores, the ALJ did in fact acknowledge that, "[i]n her Function Report, the claimant indicated difficulties with walking, talking, memory, completing tasks, concentration, understanding, following instructions, and getting along with others (Ex. 5E)." (R. 19) Indeed, "[t]here is no requirement that the ALJ discuss in its opinion

every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 Fed. Appx. 130, 133 (3d Cir. 2004). While I agree with Wallace that activities of daily living cannot be used to show an ability to engage in substantial gainful activity,[3] the ALJ did not do so here. Rather, the ALJ properly considered Wallace's allegations in light of her activities of daily living, the objective medical evidence, the extent of Wallace's treatment, and Wallace's compliance with treatment. Consequently, I find no error in the ALJ's conclusions in this regard.

### 2. Noncompliance

Wallace also takes issue with the ALJ's findings regarding noncompliance. Although the ALJ did take note of Wallace's noncompliance on several occasions, he did not make a finding that Wallace was not disabled *because* of noncompliance. Rather, he simply determined that "her inconsistent treatment and noncompliance with treatment also calls into question the severity of her symptoms." (R. 20) This is perfectly in keeping with the regulations. As explained in Social Security Ruling 16-3p, "if the frequency or extent of the treatment sought by an individual is not comparable to the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at * 9. Here, substantial evidence of record supports the ALJ's conclusion that Wallace was inconsistent in the seeking of treatment and was noncompliant with respect to treatment and medication. (R. 19-20)[4]

---

[3] *See Smith v. Califano*, 637 F.2d 968, 971-71 (3d Cir. 1981) (stating that "[i]t is well established that sporadic or transitory activity does not disprove disability.");

[4] Wallace also contends that the ALJ erred in considering her efforts to continue working in assessing the severity of her symptoms. *See* ECF Docket No. 11, p. 12. I find no error in the ALJ's consideration that Wallace continued to

Wallace does not contend that issues of noncompliance are not germane to the evaluation of a disability claim or that the ALJ failed to consider reasons for noncompliance. Rather, Wallace contends that the ALJ should not have considered any noncompliance before the alleged onset date of February 2015 because such noncompliance would not be germane to her claim. This argument is not persuasive. Wallace herself references medical records from this same period in support of her claim. *See* ECF Docket No. 7, p. 2 (citing to records dated 11/18/14, 6-26/14-12/16/14, 12/17/14-12/29/14) and 11 (citing to records dated 11/18/14). Consequently, based upon the foregoing, I find that the ALJ did not err in considering Wallace's noncompliance.

3. GAF Scores

Next Wallace contends that the ALJ failed to properly consider her Global Assessment Functioning ("GAF") scores. A "GAF score is a 'numerical summary of a [mental health] clinician's judgment of an individual's overall level of functioning.'" *Rivera v. Astrue*, 9 F. Supp.3d 495, 504 (E.D. Pa. 2014), *quoting*, American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000). *See also, Gonzalez v. Comm'r. of Soc. Sec.*, Civ. No. 18-4252, 2019 WL 2998739, at * 4 n. 9 (E.D. Pa. June 18, 2019) (stating that "GAF scores … reflect a mental health specialist's assessment of the severity of a patient's mental health symptoms on a particular day.")

---

work for a month after her alleged onset date. *See Russo v. Astrue*, 421 Fed. Appx. 184, 189 (3d Cir. 2011) (stating that "work done during alleged disability period may show that claimant can work at substantial gainful activity") and *Schade v. Colvin*, Civ. No. 13-1071, 2014 WL 320133, at * 6 (W.D. Pa. Jan. 29, 2014) (affirming an ALJ's finding that the ALJ appropriately considered a claimant's continued work after the alleged onset date of disability in evaluating claims of debilitating symptoms). *See also*, 20 C.F.R. § 404.1571.

GAF scores are no longer favored in mental health assessments. "GAF scores have not been included in the most recent version of the DSM, published in 2013, due in part to their 'conceptual lack of clarity' and lack of validity." *Gonzalez*, 2019 WL 2998739, at * 4, n. 9, *citing*, DSM-V, at 16. *See also, Torres v. Berryhill*, Civ. No. 16-2441, 2019 WL 4014416, at * 8 n. 8 (E.D. Pa. Aug. 23, 2019) (stating that "the most recent edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ('DSM-5') does not include GAF ratings as part of mental health assessments.")  Nevertheless, "the SSA has stated that 'we will continue to receive and consider GAF in medical evidence.'" *Torres*, 2019 WL 4014416, at * 8 n. 8, *citing*, Social Security Administration Administrative Message – AM 10344, effective July 22, 2013, revised October 14, 2014 ("AM – 13066")."

A GAF score:

does not trigger any unique requirements for the ALJ to fulfill; the failure to invoke the number itself does not require remand. Rather, the question is whether the ALJ "conducted a thorough analysis of the medical evidence regarding plaintiff's mental impairments," … such that the ALJ properly "addressed the issues on which plaintiff's GAF scores were based," … In other words, even if the ALJ did not specifically mention an actual GAF number, she has provided "good reasons" for discounting the GAF score if she adequately explained why she discounted the whole of the source's opinion.

*Nixon v. Colvin*, 190 F. Supp. 3d 444, 447-48 (E.D. Pa. 2016) (citations omitted).

Wallace concedes that the ALJ referenced the GAF scores and that the treatment providers did not state why they assigned a particular score. *See* ECF Docket No. 7, p. 11. The medical records indicate that Wallace received GAF scores of 53 and 55 in July of 2015, a score of 55 in April of 2016, a score of 56 in September of 2015, a score of 55 in March of 2016, and scores of 60 in May, June and August of 2016. (R. 349, 351,

378, 390, 395, 407, 411) The ALJ referenced Wallace's GAF scores during the relevant period of time of 53 through 60 and noted that they were indicative of "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." (R. 20)[5] He "afforded them little weight in determining the claimant's maximum residual functional capacity." (R. 20) The ALJ explained that, "[u]nless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. This is such a case because, although the medical evidence of record reflects a multitude of GAF scores from various providers, these ratings are without sufficient basis or explanation to establish a longitudinal history of the claimant's functioning." (R. 20) This is an appropriate basis for discounting the scores. *See Dugan v. Astrue*, Civ. No. 7-1639, 2008 WL 4500653, at * 8 (W.D. Pa. Oct. 7, 2008) (stating that, "without an explanation by the psychiatrist or psychologist of why he or she assigned the GAF score of 50, the score itself, considered in isolation, does not indicate that Plaintiff could not work.") Although Wallace insists that the records themselves provide the "accompanying explanation," the ALJ explained that these records revealed "unremarkable" mental examinations. (R. 20)[6] Consequently, I find that the ALJ's treatment of Wallace's GAF scores was appropriate.

4. State Agency Psychological Consultant

---

[5] A score of 50 or below "indicates serious symptoms, while a GAF score of 51 through 60 indicates moderate symptoms." *Rivera*, 9 F. Supp. 3d at 504 (citing DSM-IV at 32, 34).

[6] Wallace refers to Exhibit 6F, which reports GAF scores of 45, 53, and 55. Significantly, none of these GAF scores were recorded within the time period at issue – February 20, 2015 through September 30, 2015. Wallace's citation to the GAF score during the period of hospitalization similarly is unpersuasive. As the ALJ noted, Wallace was started on new medications and advised to undergo cognitive behavioral therapy on a long-term basis. (R. 19) Her GAF scores increased thereafter.

Finally, Wallace takes issue with the weight the ALJ accorded the opinion offered by Dr. Diorio, the state agency psychological consultant. Diorio found that Wallace is "capable of working within a work schedule and at a consistent pace," that she can make simple decisions, carry out "very short and simple instructions" and would "be able to maintain regular attendance and be punctual." (R. 74) She would be moderately limited with respect to her ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 74-75) Consequently, Diorio determined that Wallace is "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (R. 75)

The ALJ gave "significant weight" to Diorio's opinion. He explained that he found it to be consistent with the objective medical evidence of record. Consistency is a valid reason for crediting or discrediting evidence. *See*, 20 C.F.R. §§ 416.927, 404.1527 (evaluating opinion evidence). Substantial evidence supports the ALJ's conclusion that the opinion is consistent with record evidence. For instance, as stated above, Wallace's GAF scores continued to increase with medication and therapy. Further, her mental status examinations were noted as "generally normal" or "unremarkable." (R. 381, 388, 399) Additionally, her psychiatrist rated her clinical global impression as "moderate." (R. 381, 388, 405, 411) Significantly, Diorio's opinion is the only opinion contained in the record. That Diorio may have authored her opinion prior to the submission of all of the evidence does not preclude the ALJ from giving the opinion significant weight. *See Chandler v. Comm'r. of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (stating that, "because state agency review precedes ALJ review, there is always some time lapse

between the consultant's report and the ALJ hearing and decision.) Consequently, there is no basis for overturning the ALJ's decision to give significant weight to Diorio's opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RIANNA WALLACE                          )
            Plaintiff,                  )
                                        )
   -vs-                                 )          Civil Action No. 18-1516
                                        )
ANDREW M. SAUL,                         )
                                        )
      Defendant.                        )

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 24th day of October, 2019, it is hereby ORDERED that the

Plaintiff's Motion for Summary Judgment (Docket No. 6) is DENIED and the Defendant's

Motion for Summary Judgment (Docket No. 10) is GRANTED. It is further ORDERED

that this case shall be marked "Closed" forthwith.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge